UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARCIAL RODRIGUEZ,<br><br>      Claimant,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil Action No. 2:09-cv-02773 (SDW)<br><br><br><br><br><br><br><br>**OPINION**<br>July 15, 2010 |

**Wigenton, District Judge,**

  Before the Court is Claimant Marcial Rodriguez's appeal of Administrative Law Judge Richard DeSteno's ("ALJ") partial denial of Rodriguez's disability insurance benefits ("DIB") under Sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and his Supplemental Security Income ("SSI") benefits under Section 1614(a)(3)(A) of the Act, 42 U.S.C. § 1382c(a)(3)(A).[1] This appeal is decided without oral argument pursuant to Local Civil Rule 9.1(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated below, this Court **REMANDS** the Commissioner's decision.

**I.  Background and Procedural History**

  On April 5, 2002 and May 8, 2002, Marcial Rodriguez, at age forty-six, filed for SSI and DIB benefits respectively under the Social Security Act. Claimant claims disability beginning on

---

[1] The ALJ's decision became the Commissioner of the Social Security Administration's ("Commissioner") final decision on June 30, 2005, when the Appeals Council denied Rodriguez's request for review of the ALJ's decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

1

November 19, 2001, two years after his last employment at a warehouse's shipping and receiving department, where he had worked for nearly eight years. Claimant's applications for benefits were denied initially and then again on reconsideration. On Feburary 22, 2005, the ALJ issued an unfavorable decision and the Appeals Council denied Claimant's request for review. Subsequent to the Commissioner's voluntary remand for further administrative proceedings, the ALJ issued a partially favorable decision on March 9, 2007, and the Appeals Council subsequently declined review. Thus, Claimant commenced the present action seeking a disability finding or a remand of his claims to the Commissioner for reconsideration in light of the alleged deficiencies in denying Claimant's disabled status between November 19, 2001 and January 9, 2006.

### A.     *Medical Treatment Records for Physical Impairments*

During initial treatment in 2001, Dr. Giardino found that Claimant suffered from weak grips in both hands, some lower cervical pain, and neck pains, although his gait was normal. The doctor eventually diagnosed him with myotonic dystrophy and with spinal stenosis secondary to a degenerative central disc herniation on May 15, 2002. Dr. Giardino specifically found that due to his myotonic dystrophy, Claimant would not be able to work. Claimant was also treated by Dr. Padilla, who affirmed Dr. Giardino's findings. Claimant's myotonic dystrophy has caused muscle stiffness, bilateral hand weakness, locking of muscles in the hand when making a fist, spasms in his hands, and bilateral muscle wasting, and his spinal stenosis symptoms include constant neck and lower back pain.

Claimant has also been evaluated by two Social Security Administration ("SSA") appointed consultative examiners, Dr. Alan Friedman and Dr. Joyce Nkwonta. Dr. Friedman found that "claimant complaint[ed] of myotonic dystrophy, neck pain, and low back pain." The

doctor's findings were as follows: Claimant "move[d] very slowly"; Claimant's "[g]ait heel to toe [was] without deviation, [albeit] slow"; "when he ma[de] a fist and open[ed it], the fingers . . . tend[ed] to stay flexed . . . until they then loosen[ed] up . . . in a type of spasm"; Claimant's "[l]ow back pain and neck pain . . . are most likely secondary to myotonic dystrophy . . . limit[ing] his ability to pick up heavy objects"; "although he is able to perform fine motor coordination, it is difficult and takes time"; and "[i]f he would need to do something like writing[,] it would be expected that his hands would cramp up in a flexed position that would be more difficult for him to open his hands."

On August 20, 2003, Dr. Nkwonta found Claimant demonstrated "a normal gait and station and no difficulties with transfers," although he did have "difficulty walking on [his] toes." Dr. Nkwonta also found Claimant has "decreased range of motion in the cervical spine, lumbar spine, and ankles" and "diagnosed the claimant with neck pain with a decreased range of motion, chronic back pain, and a history of myotonic dystrophy." Regarding his hand impairments, Dr. Nkwonta found that Claimant "could tie a bow, button a large button, and operate a zipper." Finally, Dr. Nkwonta opined that Claimant "should avoid moderate to heavy lifting due to the history of neck and back pain."

*B.     Medical Treatment Records for Mental Impairments*

Claimant was evaluated by SSA-appointed Dr. Moorehead, who conducted a consultative psychiatric evaluation, and Dr. Harding, who conducted a non-examining consultative Mental Residual Functional Capacity ("RFC") Assessment. Dr. Moorehead diagnosed Claimant with Adjustment Disorder With Mixed Anxiety and Depressed Mood, noting that Claimant demonstrated a flat affect, dysphoric mood, intact attention and concentration, intact recent and remote memory skills, average cognitive functioning, and vocational capacities demonstrating

3

that he was "cognitively capable of following and understanding simple directions and instructions, performing simple rote tasks, maintaining attention and concentration and consistently performing simple tasks." Dr. Harding's subsequent mental RFC evaluation found that Claimant's ability to " understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, set realistic goals or make plans independently of others ... [were] ... [m]oderately limited"; Claimant suffered from an "adjustment disorder"; his "Restriction of Activities of Daily Living" and "Difficulties in Maintaining Social Functioning" were "[m]ild"; and his "Difficulties in Maintaining Concentration, Persistence or Pace" were "[m]oderate."

C.   *Claimant's ALJ Hearings Testimony*

At his initial hearing with the ALJ, Claimant testified regarding his physical limitations, daily activities, and pain levels. Claimant stated that "he c[ould] write for . . . maybe ten minutes [until] his fingers would lock," he could "button his shirt and tie a knot once, but not continuously," "he ha[d] to rest his hands for 15 minutes after they lock," he could not concentrate while in pain, he had neck pain and could not "sit for too long because his back cramp[ed] up" after an hour, and he could not stand or walk for very long. On a daily basis, he would watch television, take care of his personal needs, drive, although not far, "use a spoon, fork, and knife," and dress himself. Claimant added that despite seeing doctors, he received little treatment and was not taking any medication.

At his hearing with the ALJ on March 6, 2007, Claimant further testified regarding the worsening of his physical limitations: that the condition of his left foot had worsened because of weakness in his toes, that he could only walk for a block or two and very slowly, that he could barely use his hands to write because the myotonic dystrophy made his "finger get[] slack . . . in

4

a position and [he could not] grab the pen right," and that even when he tries to write, he cannot do so for long.

## II. Standard of Judicial Review

In reviewing the ALJ's decision, this Court must determine whether substantial evidence supports the ALJ's decision. 42 U.S.C. § 405(g). A reviewing court must uphold the ALJ's factual decisions where they are "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The standard involves "less than a preponderance of the evidence but more than a mere scintilla," and courts "are not permitted to weigh the evidence or substitute [their] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). However, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the Plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979).

## III. Discussion

The SSA has established a five-step sequential evaluation process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4). First, the ALJ considers whether a claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, the ALJ assesses in the second step whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant suffers from a severe impairment, the third inquiry is whether that impairment or combination of impairments meets or equals the severity of a qualified impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P ("Listing of Impairments"), which results in a

presumption of disability and the evaluation ends at this stage. 20 C.F.R. § 404.1520 (d). If not, the ALJ assesses in the fourth step whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(f). If the claimant cannot perform his past relevant work, then the final step is to determine whether there is other work that exists in significant numbers in the national economy that the claimant, given his RFC, impairments, age, education, and work experience can perform. 20 C.F.R. § 404.1520(g).

With respect to steps one, two, and four of the disability analysis, the ALJ found and the parties do not dispute, that Claimant has not engaged in any substantial gainful activity since November 19, 2001; Claimant's *physical* impairments meet the C.F.R. severity threshold; and Claimant is incapable of performing his past relevant work. This Court must consider whether the ALJ properly determined that (i) Claimant's *mental* impairments did not meet the C.F.R. severity threshold at step-two, (ii) Claimant's impairments did not meet or medically equal the criteria specified in the Listing of Impairments at step-three, and (iii) whether the ALJ posited hypotheticals encompassing all of Claimant's credible physical and mental impairments to the vocational expert at step-five.

### A. Step-Two Analysis

The Third Circuit has interpreted the "medical severity" evaluation to be a "*de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Specifically, "an impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28, 1985 SSR LEXIS 19, at *6-7). All reasonable doubts on severity are to be resolved in favor of the claimant. *Id.* Therefore, the ALJ's finding of no severe impairment

"should be reviewed with close scrutiny." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

Here, the ALJ found Claimant suffered severe physical impairments, but he concluded Claimant's mental impairments did not meet the C.F.R. standard for severity. (AR. 255.) Regulation 404.1520a sets forth a special technique to be applied in evaluating the severity of a mental impairment. 20 C.F.R. § 404.1520a(b). The ALJ must first evaluate Claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether an impairment exists. *See* 20 C.F.R. § 404, 1520a(b)(1). If an impairment is found, the ALJ must evaluate the severity of Claimant's impairments as to four broad functional areas including 1) daily living, 2) social functioning, 3) concentration, persistence or pace, and 4) deterioration in work-like settings. *See* 20 C.F.R. § 404.1520a(b)(3). While the ALJ may accept some parts of the medical evidence and reject other parts, he must consider all the evidence and give some reasons for discounting the evidence he rejects. *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

In the present case, the ALJ found that the Claimant's mental impairments were limited to "slight restrictions of activities of daily living; slight difficulties in maintaining social functioning; slight deficiencies of concentration, persistence or pace; and no episodes of decompensation," and that "[t]here [wa]s no evidence to establish…a severe impairment regarding depression." (AR. 255, 257.) In so doing, he discarded evidence to the contrary offered by Dr. Harding's non-examining psychiatric consultation. Although the ALJ is certainly expected to make reasonable judgments when applying the special technique, "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). Furthermore, "[i]f all of the evidence [received] is *consistent*, and . . . sufficient . . . for [him] to decide whether [one is] disabled, [he] will make

7

[his] determination . . . *based on that evidence.*" 20 C.F.R. § 404.1527(c)(1) (emphasis added). We note, Dr. Moorehead's and Dr. Harding's psychiatric evaluations are quite consistent. The doctors described mental limitations in the same functional categories, particularly concentration and ability to follow instructions, and the doctors described similar degrees of functional limitation, that while Claimant would be somewhat limited in his ability to complete detailed tasks requiring longer periods of concentration, he was nevertheless capable of following simple instructions, performing simple tasks, and concentrating for a shorter period of time. (AR. 197, 205-06.) Yet, the ALJ called Dr. Harding's non-examining evaluation "scratch-sheet . . . forms completed by a non-examining source" of "miniscule significance" and "no significant weight." (AR. 257.) The ALJ cannot merely declare that the consultative opinions will receive infinitesimal weight without offering a rationale for why. *Ferguson*, 765 F.2d at 37 (finding that "if the ALJ believed that [the treating physician's] reports were . . . unclear, it was incumbent upon [him] to secure additional evidence from another physician"); *see also King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980) ("Even if legitimate reasons exist for rejecting . . . evidence, [the ALJ] cannot do so for no reason or for the wrong reason."). The ALJ's decision to completely denounce Dr. Harding's opinion as "scratch-sheet . . . forms" was irrational and unjustifiable. The ALJ must afford evidentiary weight to the findings of consultative Agency physicians and psychologists, as professionals with expertise in disability claims. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 n.2 (3d Cir. 2007); *see also Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x. 140, 147 n.7 (3d Cir. 2007). As such, the ALJ must consider whether Dr. Harding's findings indicate Claimant's mental impairments have more than a minimal effect on Claimant's ability to work.

To the extent that the ALJ did weigh Dr. Harding's reports, the Court finds the ALJ

improperly relied upon the fact that the RFC and PRTF forms did not "specifically declar[e] the mental impairment to be 'severe'" in coming to the legal step-two conclusion that the mental impairment was "not severe." (AR. 256-57.) ALJs "*must* consider findings of State agency medical and psychological consultants . . . as opinion evidence, *except* for the ultimate determination about whether [the claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(i) (emphasis added); *see also Poulos*, 474 F.3d at 93 n.2. It is not the job of consultative doctors to determine severity at step-two, and the fact that the consultants did not explicitly conclude that Claimant's mental impairments were "severe" is not dispositive.

Finally, the ALJ's utilization of Claimant's lack of treatment for his mental impairments was also improper. The Third Circuit has found that "'the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek . . . medical treatment without first considering any explanations that the individual may provide.'" *Newell*, 347 F.3d at 547 (quoting SSR 96-7p, 1996 SSR LEXIS 4, at *22). Yet, in this case, the ALJ acted in direct opposition to this policy, finding that based on "the facts that the claimant has not sought or received treatment from a mental health professional, takes no medication for a mental impairment, and has not been hospitalized . . . it can only be concluded that any mental impairment that the claimant may have . . . is not severe." (AR. 258.) At no point in the hearing did the ALJ either refer to Claimant's mental impairments or inquire about Claimant's lack of treatment. In doing so, the ALJ improperly evaluated Claimant's mental impairments. These failures necessitate remand.

**B.    Step-Three Analysis**

The courts require an ALJ to "fully develop the record and explain his findings at step-three, including an analysis of whether and why each of claimant's impairments, or those

9

impairments combined, are or are not equivalent in severity to one of the listed impairments." *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 263 (3d Cir. 2006) (internal quotation marks omitted). The ALJ may accept some parts of the medical evidence and reject other parts, however, he must consider all the evidence and give some reason for discounting the evidence he rejects. *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983). In evaluating the validity of "statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s)," the SSA directs the ALJ to consider the treatment relationship and the consistency among the opinions. 20 C.F.R. §§ 404.1527(a)(2)-(d)(4).

Here, the ALJ found Claimant's myotonic dystrophy does not equal the medical severity of impairment 11.13 on the Listing of Impairments and cervical spinal stenosis does not equal the medical severity of impairment 1.04 on the Listing of Impairments. (AR. 255.) While the record indicates that Dr. Giardino and Dr. Padilla are Claimant's treating physicians, the ALJ's opinion implicates that he relied almost exclusively on Dr. Nkwonta's one time consultative findings. *See* AR. 256 (mentioning that Claimant had no difficulties with transfers, and could walk on heels, had the ability to "tie a bow, button a large button . . . manipulate a zipper," and could walk with a "normal unassisted gait"). Consultative examination results are generally considered with particular caution when treating physicians' examinations are readily available because single examinations are not as effective in capturing the full extent of a chronic impairment. See 20 C.F.R. § 404.1527(d)(2). While the ALJ can rely on Dr. Nkwonta's consultative examination, he improperly ignored both of Claimant's treating physicians' reports and another SSA-mandated consultative examination report. Specifically, Dr. Giardino's, Dr. Padilla's, and Dr. Friedman's reports consistently demonstrate the following: Claimant has suffered from persisting hand grip weakness in both hands since the onset of his symptoms in

November 2001, AR. 146, 156, 158-60, 163, 174, 179, 185, 187-90, Claimant's hand impairments have been a result of his myotonic dystrophy, AR. 145, 156, Claimant's hand impairments have resulted in spasmodic locking of his fingers making it difficult to grip or write, AR. 145-46, 156, 185, 187, Claimant has concurrently suffered from chronic neck and lower cervical pain as a result of his spinal stenosis, AR. 145-46, 152, 156-57, 179, 185, 253, and Claimant's gait, though oftentimes normal, may sometimes be slow and difficult as a result of his muscular dystrophy.[2] (AR. 146, 156.) In fact, even Dr. Nkwonta made observations consistent with the rest of the record: that Claimant suffers from myotonic dystrophy, that his hands lock and delay grip release, that he has chronic neck and back pain, and that despite Claimant's normal gait, he had "difficulty walking on toes." (AR. 192-93.) Simply put, the ALJ failed to give some indication of the evidence which he rejects and his reason(s) for discounting such medical evidence. On remand, the ALJ shall fully develop the record and explain his findings at step-three, including an analysis of whether and why Claimant's treating physicians' findings supports a determination that Claimant's "severe" impairments are or are not equivalent in severity to one of the listed impairments. *See Burnett*, 220 F.3d at 120.

Similarly, this Court also finds that the ALJ improperly determined that Claimant's "subjective complaints [of pain]...[we]re far in excess of what could reasonably be expected from his activities of daily living, medical conditions, and the objective medical evidence." (AR. 256.) The ALJ specifically focused on Dr. Nkwonta's conclusions that "the claimant [wa]s able to independently [] attend to his personal needs; use a spoon, fork, and knife; drive a car; use public transportation; manage his money; go out alone and take walks." *Id.* However, not only do Dr. Giardino's, Dr. Padilla's, and Dr. Friedman's reports corroborate Claimant's testimony

---

[2] The Court notes that even Dr. Moorehead, an SSA-appointed doctor who conducted a consultative psychiatric evaluation, noted in his report that Claimant demonstrated a left leg limp during his examination. (AR. 196.)

regarding his limitations and pain, they document his complaints over an extended treatment period and include treatment reports from nearly half a year prior to his filing for disability. Such medical findings are entitled to greater weight. *See Dorf v. Bowen*, 794 F.2d 896, 902 (3d Cir. 1986) ("[C]omplaints of pain and disabling conditions made to a physician *before* a claim for disability benefits has been filed… may [] be entitled to greater weight"). However, the record indicates the ALJ completely rejected Claimant's description of his capabilities and pain and the consistent treatment record with little substantiation. Therefore, the ALJ's determination to reject Claimant's complaints of pain as not credible in this case was not properly made and is thus, not supported by substantial evidence. "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Therefore, this Court must remand.

## C.   Step-Five Analysis

At step-five, the ALJ considers Claimant's RFC to determine whether his impairment(s), "prevent[s] [him] from making an adjustment to any other work." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. §§ 404.1520(a)(4)(v) and (g). The Third Circuit has held the testimony of a vocational expert ("VE") based on hypotheticals encompassing all of Claimant's credibly established limitations qualifies as substantial evidence. *Covone v. Comm'r of Soc. Sec.*, 142 F. App'x 585, 587 (3d Cir. 2005).   The ALJ is not required to inform a VE of Claimant's every alleged impairment, only those impairments that have been determined to affect Claimant's ability to work. *Id.*; *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). However, when a VE has provided testimony based on an ALJ's inaccurate depiction of the claimant's impairment(s), evidence that an *accurate* depiction of impairments would have

12

proven the claimant's inability to adjust to any other work in the national economy can be used to reject an ALJ's step-five finding. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984.) Without coming to a conclusion as to how step-two and step-three could transitively affect step-five on remand, this Court finds the ALJ's hypotheticals were based on the inaccurate depiction of Claimant's combination of impairments.

In the present case, the ALJ used the testimony of two VEs, Melissa Fass Carlin and Rocco J. Meola, to conclude that Claimant was capable of adjusting to work as a surveillance system monitor. (AR. 259.) The ALJ presented to Ms. Carlin hypotheticals construing Claimant's RFC to include lifting and carrying objects weighing up to ten pounds, sitting, standing and walking up to six hours in an eight hour day, and not requiring pushing or pulling of arm controls or repetitive grasping with either hand. (AR. 259, 269.) The ALJ also presented similar hypotheticals to Mr. Meola aside from adjusting Claimant's RFC to include standing and walking up to two hours in an eight-hour day. (AR. 271.) On these bases, both VEs opined that Claimant could adjust to work as a surveillance system monitor. (AR. 259.)

However, the record shows that Claimant consistently testified as to his inability to write at both ALJ hearings, and his treating physicians' ongoing reports also documented his hand grip weakness and inability to write. The Third Circuit has held that subjective complaints of pain must be considered and may support a finding of disability. *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d Cir. 1984). Furthermore, an ALJ must weigh testimony as to pain or other symptoms against the objective medical evidence. 42 U.S.C. § 423(5)(A). Here, the ALJ failed to analyze both Claimant's testimony and the medical reports documenting Claimaint's hand limitations. In light of Mr. Meola's testimony that a hypothetical claimant with the inability to "write for any period, because his hands were impaired as the result of a neurological disorder," would, in fact,

be incapable of being a surveillance system monitor as well as incapable of taking any other work within the national economy, AR. 275, 277, the ALJ's conclusion at step-five relied on inadequate hypotheticals and must be remanded. *See Podedworny*, 745 F.2d at 218.

## IV.   *Conclusion*

For the foregoing reasons, the Court holds that substantial evidence does not support the ALJ's decision. Accordingly, the Court **REMANDS** the case for further proceedings pursuant to this opinion.

**SO ORDERED.**


                                                        s/Susan D. Wigenton
                                                        U.S.D.J.

Orig:       Clerk
Cc:         Parties